# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KARL BROSIUS AND
MARYLOU BROSIUS,

      Plaintiffs,

v.

      Case No. 13-10109

      Paul D. Borman
      United States District Judge

WELLS FARGO BANK, N.A.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 11)

This is a mortgage foreclosure case. Plaintiffs Karl Brosius and Marylou Brosius ("Plaintiffs") filed their complaint in Circuit Court for the County of Macomb on December 14, 2012. (Dkt. No. 1, Ex. A). On January 11, 2013, Defendant Wells Fargo Bank, N.A. ("Defendant") removed this case to federal court based on diversity jurisdiction. (Dkt. No. 1).

Now before the Court is Defendant's Motion for Summary Judgment filed on October 11, 2013. (Dkt. No. 11). Plaintiffs did not file a response to the motion and therefore Defendant did not file a reply.[1]

The hearing on this matter was held on Thursday, April 10, 2014. For the following reasons, the Court will GRANT Defendant's Motion for Summary Judgment.

---

[1] While Plaintiffs did not file a response brief to Defendant's motion, Plaintiffs' attorney did attend the hearing on this matter and present oral argument.

## I. BACKGROUND

On or about June 30, 2003 Plaintiffs granted a mortgage to Wells Fargo Home Mortgage. (Def.'s Ex. A, Mortgage).[2] Defendant is a successor in interest by merger to this mortgage. (Def.'s Br. at 2; Ex. D, Sheriff's Deed at 1). As explained in the mortgage documents, the mortgage secured repayment of a $251,910.00 loan that Plaintiffs used to purchase property located at 2824 Lillian Road, Ann Arbor, Michigan (the "Property"). This Mortgage was recorded on July 21, 2003. (Mortgage at 1; Sheriff's Deed at 1).

In October 2009, the Plaintiffs became delinquent in their mortgage payments when Plaintiff Karl Brosius lost his job and suffered health and psychological problems. (Def.'s Br. at 1; Compl. ¶ 5). Defendant represents that the parties communicated regarding a potential loan modification through the Home Affordable Modification Program ("HAMP") between October 2009 and December 2009 and documents were submitted by Plaintiffs to this end. (Def.'s Br. at 1). However, Defendant never received the correct or completed documents and the HAMP loan modification was denied on December 2, 2009. (Ex. B, Notes; Compl. ¶ 18). Defendant thereafter reviewed Plaintiffs for an "alternative loss mitigation solution". (Compl. ¶ 18). Defendant states that Plaintiffs were "set up on a forbearance agreement, as their financial situation was expected to improve." (Def.'s Br. at 1). Plaintiffs assert that then, pursuant to a trial loan modification, they paid $1,298.34 to Defendant in July, August, September and

---

[2] For ease of reference, unless indicated otherwise, all exhibits referred to are attached to Defendant's brief.

2

October of 2010.[3] (Comp. ¶ 21). Defendant has not produced any records regarding the alternative modification but does not dispute Plaintiffs' allegations regarding this trial loan modification.

It is undisputed that on or about December 20, 2010, Defendant served Plaintiffs with the notice required by MICH. COMP. LAW § 600.3205. (Ex. C, Notice; Compl. ¶ 11). This notice provided that Plaintiff had 14 days to contact a housing counselor and request a meeting to attempt a work out of the debt. (Ex. C, Notice). Plaintiffs claim they contacted Defendant to resolve the matter but Defendant lost their paperwork and failed to extend the foreclosure date by 90 days as provided by statute. (Compl. ¶¶ 12-13). Plaintiffs allege they received a letter from Defendant on February 22, 2011 that "the investors would not give the Bank the authority to modify the mortgage." (Compl. ¶ 14).

Defendant represents that no meeting was requested and as a result the foreclosure process went forward with the required publications appearing on January 20, January 27, February 3 and February 10, 2011. (Ex. D, Sheriff's Deed, Affidavit of Publication at 3, Affidavit of § 600.3205 Notice at 7, stating that Plaintiffs did not request the meeting within 14 days).

The Sheriff's sale took place on February 17, 2011 and Defendant purchased the Property for $214,954.76. (Ex. D, Sheriff's Deed at 1; Affidavit of Purchaser at 8). The redemption period expired on August 17, 2011.

---

[3] It is unclear from Defendant's one page of notes in this matter whether Plaintiffs also paid any amount in January, February or March 2010. (Ex. B). It appears from the notes this was a trial period pursuant to HAMP that did not move forward because the modification was denied in December 2009.

3

Plaintiffs failed to redeem the Property during the statutory redemption period, and they did not file any legal action until Defendant filed an eviction action in Michigan's 15th District Court in Ann Arbor on September 12, 2011. (Def.'s Br. at 2-3). Plaintiffs appear to have filed an answer in that summary proceeding alleging that the foreclosure was procedurally and contractually improper (Def's Br. at 2) but failed to file a response to the motion for summary disposition in that matter. (*See* Ex. F, Order denying Motion to Set Aside and Transcript of hearing, Tr. at 11).

On January 26, 2012, the 15th District Court issued a Judgment of Possession in favor of Defendant and held that an order of eviction would be issued on February 6, 2012. (Ex. E, Judgment). Thereafter, Plaintiffs filed a motion to set aside the Judgment and a hearing was held on May 3, 2012. (Ex. F, Order denying Motion to Set Aside and Transcript of hearing). This motion was denied following the hearing and Plaintiffs then appealed. (*Id.*). Plaintiffs' attorney represented during the hearing to set aside the Judgment that he had filed an action against Defendant in circuit court, but had failed to serve the complaint and needed to re-file the action. (Ex. F, Hearing Tr. at 4). On September 12, 2012, Plaintiffs' appeal was denied by Washtenaw County Circuit Court.[4] (Ex. G, Order denying Appeal and Awarding Costs).

Plaintiffs also filed a motion for reconsideration of a November 2012 Eviction Order and filed for an adjournment of the Motion To Stay Order of Eviction in November 2012 and on December 12, 2012 due to Plaintiff Karl Brosius' health. (Dkt. No. 1, Ex. A, Pl.'s Mot. To Stay

---

[4] Defendant represents that Plaintiffs failed to file a brief in the appeal and that was the reason for the denial, and Plaintiffs' complaint confirms this. (*See* Compl. ¶ 41, "[a]n Appeal was filed, and dismissed because of the Homeowner's Counsel failing to perfect the appeal." However, the order dismissing the appeal does indicate that oral argument was held. (Ex. G)).

4

Order of Eviction dated 12/14/12 at ¶¶ 2-3). On December 13, 2012, the 15th District Court entered an Order of Eviction. (*Id*.). On December 14, 2012, Plaintiffs filed a "Complaint for Damages and for Declaratory Relief to Set Aside a Sheriff's Sale on a Mortgage Foreclosure by Advertisement" as well as a motion to stay the order of eviction and grant a preliminary injunction in Washtenaw Circuit Court. (Dkt. 1, Ex. A). On January 11, 2013, Defendant removed that case to this Court. (Dkt. No. 1). It is unclear from the pleadings, but Plaintiffs appear to be residing in the house and at one time (at least through the end of December 2012) paying into an escrow held at the 15th District Court in Ann Arbor. (Pl.'s Mot. To Stay at ¶ 3).

## II.  STANDARD OF REVIEW

Defendant has moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. This rule provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id*. at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

5

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

6

The Court notes that Plaintiffs failed to file a response to Defendant's motion for summary judgment, however, this fact "does not itself doom their complaint." *Scipio v. Sony Music Entertainment, Inc.*, 173 Fed. App'x 385, 393 (6th Cir. 2006). The Sixth Circuit has noted that "the non-movant's failure to respond does not free the movant of the burden of establishing that 'the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)); *see Aquent, LLC v. U.S.*, No. 08-15275, 2011 WL 1397105, at *1 (E.D. Mich. Apr. 13, 2011) (J., Cohn) (recognizing same). Further, Plaintiffs' attorney presented oral argument which was considered by this Court.

### III. ANALYSIS

Plaintiffs set forth four claims in their complaint: (1) violation of the Michigan Foreclosure Statutes; (2) negligence, (3) breach of agreement; and (4) acting in bad faith and against public policy. Defendant argues that Plaintiffs' Complaint must be dismissed because the claims are either barred by the doctrine of res judicata or fail as a matter of law.

**A.   Violation of Michigan's Foreclosure Statutes**

Plaintiffs assert in their complaint that Defendant violated the Michigan foreclosure statutes because the "Defendants have not provided the true owners of interest to the register of deeds prior to the Sheriff's sale. For the reason they state the Mortgage was owned by investors." (Compl. ¶ 25). Plaintiffs also claim that Defendant violated the Michigan Foreclosure statutes because the "Foreclosure statute requires that a Sheriff's Sale be held in abeyance for 90 days if a homeowner requests to resolve the problem amicably [and] the foreclosure sale had not been delayed for an agreement to be attempted." (Compl. ¶ 26). Plaintiffs seek to set aside the Sheriff's sale for these reasons. Defendant argues that these claims are barred by res judicata due to the state court's Judgment of Possession in favor of

Defendant which settled the issue of title and the propriety of the foreclosure proceeding.

      1.      Res Judicata

The doctrine of res judicata, or claim preclusion, bars the relitigation of a final judgment on the merits in a subsequent action. "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010) (citing *Abbott v. Mich.*, 474 F.3d 324, 330-31) (6th Cir. 2007)). "This doctrine applies where the first action was decided on the merits; the matter contested in the second action was or could have been resolved in the first, and both actions involve the same parties or their privies." *Simpson v. JP Morgan Chase Bank*, N.A., No. 292955, 2010 WL 3814853, at *1 (Mich. App. Sept. 30, 2010) (citing *Dart v. Dart*, 460 Mich. 573, 586 (1999)). Michigan courts construe res judicata very broadly and have barred claims that have been litigated as well as "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Sewell v. Clean Cut Management, Inc.*, 463 Mich. 569, 575 (2001) (quoting *Dart*, 460 Mich. at 586).

The exception to this broad application, however, is when the first action is a summary proceeding. *Id.* at 574 (citing *JAM Corp. v. AARO Disposal, Inc.*, 461 Mich. 161, 168-70 (1999)). In a summary proceeding, a judgment for possession "entitles the plaintiff to possession of the premises and sets the amount due under the contract, which the defendant must pay." *JAM Corp.*, 461 Mich. at 170. The Michigan Supreme Court has explained:

> Our decision in *JAM Corp.* recognized a statutory exception to [the general application of res judicata] with respect to claims that "could have been" litigated in a prior proceeding. There, we recognized that the legislative intent for this exception was to remove the incentive for attorneys to "fasten all other pending claims to swiftly moving summary proceedings." Our decision in *JAM Corp.* said nothing about the preclusive effect of claims actually litigated in the summary proceedings. Thus, the "other claims of relief," described in *JAM Corp.*, [] were

> those claims that "could have been" brought during the summary proceedings, but were not. This court was not describing subsequent claims involving the issues actually litigated in the summary proceedings.

*Sewell*, 463 Mich. at 576 (internal citations omitted). Therefore, a "judgment in [] summary proceedings, no matter who prevails, does not bar other claims for relief" but does bar those claims that were actually litigated. *JAM Corp.*, 461 Mich. at 170. The state action in the current case falls within this exception to the broad application of res judicata in Michigan law.

The Court now turns to whether the three elements of res judicata have been satisfied in this case. First, there is no question that the previous state court judgment was a decision on the merits as Plaintiffs unsuccessfully sought to set aside the order and also appealed the order. (Def.'s Br. Exs. E, F & G). Further, it is clear that the parties in both the first action and the current action are the same identical parties. Therefore, two of the three elements of res judicata have been satisfied and the sole issue is whether the current claim asserted was actually litigated or raised in the summary proceeding as explained in *JAM Corp.* decision.

Here, Plaintiffs seek to relitigate the same issue that was before the state court in the summary proceeding: the validity of the foreclosure proceedings. As such, the Court finds that Plaintiffs' claims based on violations of the Michigan foreclosure statutes are barred by res judicata.

The Michigan Court of Appeals recently examined this issue in *LaVoy v. Alternative Loan Trust*, No. 310322, 2014 WL 783497 (Mich. App. Feb. 25, 2014). In *LaVoy*, the plaintiff argued her claims for quiet title and "abuse of process and fraud"[5] were not barred by res

---

[5] In *LaVoy*, the court explained that the plaintiff's "abuse of process and fraud" count alleged that the defendant lacked the legal authority to take plaintiff's property and that the records regarding the promissory note and certificate were deficient and therefore the foreclosure by advertisement process was fraudulent and abusive and the sheriff's sale was invalid. *Id.* at *7.

9

judicata after a summary proceeding in which a consent judgment had entered awarding possession to the defendant bank. *Id*. The *LaVoy* court noted that the consent judgment was an acknowledgment of "defendant's right to possession and the validity of the sheriff's sale because a valid foreclosure procedure and sheriff's sale resulting in defendant's possession of the property is a prerequisite to defendant's entitlement to an eviction order." *Id*. at *8. The court went on to conclude that the judgment was "conclusive in regard to defendant's right of possession and res judicata bars relitigation of the validity of the foreclosure proceedings and the sheriff's sale on which defendant's right of possession was premised." *Id*.

Plaintiffs' claims for violations of the Michigan foreclosure statutes contend that the title records are deficient and that Defendant failed to properly follow the foreclosure by advertisement statute and requests that the Court set aside the Sheriff's sale. (Compl. ¶¶ 23-27). Similar to the plaintiff in *LaVoy*, the current Plaintiffs are improperly seeking "to relitigate the validity of the foreclosure proceedings and sheriff's sale." *Id*.; *see also Simpson*, 2010 WL 3814853, at *1 (upholding the application of res judicata to bar a plaintiff's action to set aside a sheriff's sale after the district court judgment previously affirmed the defendant's right of possession in a summary proceeding.).

In the present action, the state court issued a Judgment of Possession in favor of Defendant, finding that Defendant had the right to possession and upholding the validity of the foreclosure proceedings. While the Court is not in possession of the transcript of the hearing granting that decision,[6] the Court has reviewed the transcript of Plaintiffs' attempt to set that judgment aside. In that hearing, Plaintiffs specifically asserted the argument that the parties on

---

[6] Defendant represents that a whole or accurate transcript was not taken because of technical problems.

10

the deed were incorrect because of Defendant's merger in 2004 (Ex. F, Tr. at 5, 10). Plaintiffs also asserted the argument that they were entitled to a 90 day period to attempt to modify the loan. (Def.'s Br. Ex. F, at 9). These arguments are identical to the allegations set forth in Plaintiff's claim for violations of the Michigan foreclosure statutes. (Compl. ¶¶ 23-27). The Michigan court rejected these arguments as did the appeals court. (Ex. G). Further, while acknowledging that certain claims for damages were outside the purview of the district court, Plaintiffs' attorney explicitly stated that main issue before the district court in the summary proceeding was "whether the proper foreclosure procedures have occurred." (Ex. F, Tr. at 9, 10).

Hence, the record is clear that Plaintiffs' current claims were asserted as defenses in the summary proceeding and they were rejected by the state court in a decision on the merits awarding possession to Defendant. *See also Richardson v. Wells Fargo Bank, N.A.*, No. 13-10234, 2013 WL 3814275, at *4-5 (E.D. Mich. July 22, 2013) (holding plaintiffs' attempt to re-litigate the issue of who held title to certain property was barred by res judicata because the actual purpose of the summary proceeding was to quiet title to the property.). Therefore, as Defendant has established all three elements of res judicata, the Plaintiffs' claim is barred.

**B.     Negligence**

Plaintiffs also appear to assert a claim of negligence in their complaint. (Compl. ¶¶ 28-31). Plaintiffs claim that Defendant had a duty to "obtain documents Plaintiffs provided and have the information properly evaluated prior to a Sheriff's sale." (Compl. ¶ 29). Plaintiffs claim Defendant violated this duty by losing and misplacing Plaintiffs' documents and the result of this negligence was the foreclosure and sale of Plaintiffs' home. (Compl. ¶¶ 30-31).

In Michigan, to state a prima facie case of negligence, a plaintiff must allege: duty,

breach, causation, and damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). "The threshold question in a negligence action is whether the defendant owed a duty the plaintiff." *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 464 (2004). Whether a duty exists is a question of law. *Id.* at 463.

It is unclear from Plaintiffs' complaint what duty Plaintiffs allege Defendant owed to them. Indeed, Plaintiffs utterly fail to identify from where or how this duty to obtain and evaluate Plaintiff's modification documents arises in the complaint and have failed to file a response which could clarify the matter. Defendant's arguments appear to assume Plaintiffs' theory of duty is based on the Mortgage itself or some other "other agreements" between Defendant and the Federal government such as the Home Affordable Modification Program ("HAMP"). (*See* Plaintiff's Claim for Breach of Agreement, Compl. ¶¶ 32-34). The Court finds that Plaintiffs' failure to adequately allege a duty separate and distinct from the contractual obligations between Plaintiffs and Defendant is fatal to their claim.

In Michigan, a negligence claim based on contract arises only where the plaintiff alleges a duty that is "separate and distinct" from a contractual duty. *See Fultz*, 470 Mich. at 467; *see also Loweke v. Ann Arbor Ceiling & Partition, Co., LLC*, 489 Mich. 157 (2011) (clarifying *Fultz* standard and recognizing that the "separate and distinct" mode of analysis does not "extinguish or limit separately existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract."). "The failure to perform a contractual duty cannot give rise to a tort action unless the plaintiff alleges a violation of a duty 'separate and distinct' from the underlying contractual obligation." *Kisiel v. Holz*, 272 Mich. App. 168, 172 (Mich. Ct. App. 2006).

In this action, Plaintiffs allege that Defendant "had a duty to obtain the documents

Plaintiffs provided and have the information properly evaluated prior to a Sheriff's sale." (Compl. ¶ 29). However, this allegation is not a duty that exists under Michigan law. *See Polidori v. Bank of Amer., N.A.*, --- F.3d ---, 2013 WL 5651432, *8 (E.D. Mich. 2013) (relying upon *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 198-99 (Mich. Ct. App. 1991) in holding that there is no duty under Michigan law to conduct a reasonable inquiry as to whether a plaintiff would qualify for a loan modification); *see Selakowski v. Fed. Home Mortg. Corp.*, Slip Copy, No. 13-12335, 2014 WL 1207874, at *8 (E.D. Mich. Mar. 24, 2014) ("Plaintiffs cannot pursue a claim of negligence where their relationship with Wells Fargo is governed by an express contract, and where they have failed to allege that Wells Fargo owed them a duty separate and distinct form its obligations under the parties' contract."); *Johnson v. Wells Fargo Bank, N.A.*, No. 13-10146, 2013 WL 823369, at *6-7 (E.D. Mich. Mar. 6, 2013); *see Droski v. Wells Fargo, N.A.*, 2012 WL 3224134, at *6 (relying on *Ulrich* to dismiss a negligence claim when plaintiffs claimed the bank owed them a duty to comply with relevant mortgage statutes and industry standards for the lending industry.); *see also Coyer v. HSBC Mortg. Services, Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (recognizing that under Michigan law "there is generally no fiduciary relationship between a mortgagor and a mortgagee.").

Finally, to the extent Plaintiffs could be arguing that Defendant's duty arose from the HAMP guidelines, this theory has also been rejected. *See Ahmad v. Wells Fargo, N.A.*, No. 11-15204, 2012 WL 917769 (E.D. Mich. Mar. 19, 2012) (rejecting plaintiffs argument that HAMP guidelines create a duty of care); *McKinney v. Nationstar Mortgage, LLC*, No. 11-12421, 2012 WL 3779179, at *5 (E.D. Mich. Aug. 31, 2012) (finding the same).

## C.    Breach of Agreement (Third-Party Beneficiary)

Plaintiffs assert a breach of agreement claim based on their alleged third-party

beneficiary status to an agreement between Defendant and "various federal agencies to change their lending practices and to try to help homeowners save their homes ...". (Compl. ¶ 33). Plaintiffs allege that "[t]he Federal government has provided monies through Tarp and other federal programs" and "Defendants have failed to assist or attempt to find an amicable solution to the losses caused by the Sherriff's [sic] Sale." (Compl. ¶¶ 34, 36).

"The elements of a claim for breach of contract under Michigan law are: (1) the existence of a valid contract between the parties; (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Keiper, LLC v. Intier Auto. Inc.*, 467 Fed. App'x 452, 459 (citing *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003)). Additionally, under Michigan law, to state a third-party beneficiary claim, a plaintiff must plead and prove that the contracting parties intended the plaintiff to benefit from their agreement. MICH. COMP. LAW § 600.1405; *Koenig v. City of South Haven*, 460 Mich. 667, 680 (1999).

Here, Plaintiffs' vague pleadings fail to set forth a claim for relief. Indeed, Plaintiffs' pleadings fail to identify the agreement that was breached, fail to identify the "various federal agencies" that were parties to the contract, and fail to identify with any particularity what provision of the agreement was breached. For this reason alone, the Court could dismiss Plaintiffs' claim as it is well settled that a party must offer sufficient factual allegations that make an asserted claim plausible on its face, and that a mere formulaic recitation of the elements of a cause of action will not suffice. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-70 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Alternatively, Plaintiffs' claim for breach of the unspecified agreement also fails as a matter of law. Speculating that Plaintiffs are attempting to assert that Defendant breached the

HAMP guidelines, it is well settled that no private right of action is available under HAMP. *See Helmus v. Chase Home Finance, LLC*, 890 F. Supp. 2d 806, 812 (W.D. Mich. 2012) (recognizing that "HAMP does not provide a private right of action to borrowers"); *Duff v. Federal Nat'l Mtg. Ass'n*, No. 11-12474, 2012 WL 692120, at *4 (E.D. Mich. Feb. 29, 2012) ("[A]s recognized by [] this and other federal courts, there is no private right of action under HAMP."); *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *9 (E.D. Mich. Feb. 16, 2012) (finding that no duty exists under HAMP to modify a loan and even if such a duty did exist, HAMP does not create a private right of action under which plaintiff may seek relief). It is also well established that Plaintiffs cannot claim to be third party beneficiaries of the HAMP agreements. *Duff*, 2012 WL 692120, at *5 (recognizing that "the overwhelming majority of courts have held that borrowers are not third-party beneficiaries to the servicing contracts entered into between loan servicers and Fannie Mae"); *see also Ahmad v. Wells Fargo Bank, N.A.*, 861 F. Supp. 2d 818, 826 (E.D. Mich. 2012) (noting that "[f]ar from establishing a new duty of care that would cast a wider net of liability under state-law negligence claims, the [HAMP] statute removes a legal barrier to more widespread loan modification activity so as to encourage servicers to participate in HAMP and related programs.") (internal quotation marks and citation omitted); *Blackmore v. Wachovia Mortg. Corp.*, No. 12-250, 2013 WL 504388, at *3 (D. Utah, Feb. 8, 2013) (recognizing "courts around the country have, with near unanimity rejected borrowers' claims to being a third-party beneficiary to the HAMP agreement between the lender and the federal government) (internal quotation marks omitted).

Finally, to the extent Plaintiffs are attempting to assert a claim based on an unspecified consent agreement (which has not been attached to the pleadings or the motion for summary judgment) between Defendant and the US Department of Treasury regarding the remediation of

15

certain foreclosure practices, this claim also fails. (*See* Office of the Comptroller of Currency, http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47k.pdf (last visited Apr. 3, 2014). The consent order states explicitly that "[n]othing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors, hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." (*Id*., Art. XIII, 10, at ¶10, p. 27). The Sixth Circuit has recognized that "a consent decree is not enforceable ... by those who are not parties to it." *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992) (quotation omitted).

For all these reasons, the Court finds that Plaintiffs' claim for breach of an agreement as a third-party beneficiary fails and must be dismissed.

**D.     Acting in Bad Faith And Against Public Policy**

Plaintiffs' final claim is one enigmatically entitled "Acting in Bad Faith and Against Public Policy." It is unclear what exactly Plaintiffs are attempting to plead with this claim. Plaintiffs recite a brief history of the state court summary proceeding and then allege that "subsequent to the Sheriff's sale, and after the Order of Eviction, the majority of States and federal Government, entered into an agreement with financial institutions concerning the practices of the institutions in the loan and mortgages." (Compl. ¶ 43). Plaintiffs assert that "Defendants have failed to act in good faith to attempt a financial resolution that would allow Plaintiffs to keep the home" and "failed to comply with the intent of the agreement of the government." (Compl. ¶¶ 45-46).

First, the Court recognizes that again this claim fails to set forth a plausible claim due to vague and thread-bare allegations. *See Twombly*, 550 U.S. at 555-70. Further, any claim that Plaintiffs appear to be alleging is duplicative and derivative of their baseless third-party

beneficiary claim and attempts to enforce an unspecified agreement between Defendant and the federal government to which Plaintiffs are not a party. *See* Section D, *supra*. Therefore, this claim is also dismissed.

## V. CONCLUSION

For all these reasons, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 11) and DISMISS Plaintiffs' Complaint WITH PREJUDICE.

SO ORDERED.

                                  s/Paul D. Borman
                                  PAUL D. BORMAN
                                  UNITED STATES DISTRICT JUDGE

Dated: May 27, 2014

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 27, 2014.

                                  s/Deborah Tofil
                                  Case Manager